**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Case No. 25-MJ-182** |
| **v.** | |
| **TERRANCE LYNWOOD BOYD,** | |
| **Defendant.** | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Terrance Lynwood Boyd be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E).

On August 21, 2025, a federal grand jury in Washington, D.C. returned an eight-count indictment in case number 25-cr-241 (TJK), charging eight individuals with, *inter alia*, conspiring to distribute and possess with intent to distribute one kilogram or more of a mixture and substance containing a detectable amount of phencyclidine ("PCP") and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iv), (b)(1)(A)(vi), and 846.

On August 26, 2025, following a coordinated arrest operation, the defendant was one of several arrested, and he was charged by criminal complaint with unlawful possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Since 2001, the defendant has committed a steady stream of firearm and drug-related offenses, plus a robbery with a gun. Here, when he was arrested, the defendant was under supervision for illegal possession of drugs and ammunition. This is a

persistent theme.  When under supervision, the defendant has consistently fared poorly, and his supervision has been revoked time and time again.  Given these circumstances, and considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, the Court should order the defendant detained pending trial.

## SUMMARY OF INVESTIGATION

The indictment in 25-cr-241 (TJK) stems from an investigation into a narcotics trafficking conspiracy in the 2900 block of Knox Place SE.  Through various investigative methods, including twenty controlled buys of fentanyl and PCP, Eric Prather was identified as a large-scale narcotics trafficker selling bulk quantities of fentanyl and PCP from the 2900 block of Knox Place.  Law enforcement made eighteen of the twenty controlled buys from Prather, and two from Melvina Rawlings.

During one of the controlled buys associated with the narcotics trafficking conspiracy, on June 17, 2025, an undercover officer purchased 9.884 grams of PCP and 0.569 grams of fentanyl from Rawlings.  Before providing the undercover with the fentanyl (which was meant to be a sample), Rawlings approached the defendant and two went into an apartment together to retrieve a clear container of fentanyl, which was given to the undercover.

At the conclusion of the investigation, law enforcement executed a coordinated arrest operation on August 26, 2025, resulting in the seizure of 20 firearms, more than 2 kilograms of narcotics, and approximately $50,000.  Specifically, during the search of the defendant's D.C. apartment, law enforcement recovered a pistol, as well as suspected marijuana in baggies and paraphernalia indicative of sale.

## FACTUAL BACKGROUND

On August 26, 2025, law enforcement conducted a joint operation to execute arrest warrants, issued pursuant to the above-referenced indictment return, and residential warrants in 20 locations, including the defendant's residence at 1222 Southern Avenue SE, Apt. 201. During the execution of the search warrant, law enforcement found the defendant inside with one adult female and one teenage juvenile male. There was an air mattress in the living room, and the juvenile claimed ownership over the electronics present on the mattress. On the apartment floor, law enforcement found 3 plastic bags full of microtubes consistent with the sale of controlled substances.

Law enforcement searched inside one of the defendant's bedroom's two closets (the one closest to the bed) and found the defendant's clothing and juvenile male clothing inside. Inside the bedroom, law enforcement recovered $10,179 in U.S. currency. $10,010 was inside a safe beneath a nightstand placed between the bed and the closet. This cash was bundled together into nine bundles of $1,000 and one bundle of $1,010 in mixed denominations of $10, $20, $50, and $100 bills. The remaining $169 was in the nightstand drawer. Also located in the bedroom was a green leafy substance packaged in individual bags, a money counter, a vacuum sealer, and a scale.

Hanging on a hook on the outside of that same bedroom closet door—next to the nightstand—law enforcement found a Ruger-5.7 pistol. The firearm was loaded with one round of 5.7x28mm ammunition in the chamber, and at least two additional rounds of ammunition in the magazine, which had been inserted into the weapon.



Boyd was placed under arrest and charged by complaint with one count of violating 18 U.S.C. § 922(g)(1), which makes it unlawful for a person previously convicted of a crime punishable by a term of imprisonment exceeding one year to possess a firearm.

**LEGAL AUTHORITY & ARGUMENT**

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence

against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

## I.    Bail Reform Act Factors Favor Detention Given Danger to the Community

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community should he be released. See 18 U.S.C. § 3142(e)(1). All four Section 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g).

### A.    The Nature and Circumstances of this Offense Merits Detention

Here, despite being a convicted felon many times over, the defendant stored a firearm in

his bedroom just hanging from a hook on the door to his bedroom closet.  Apparently staying in the apartment with the defendant and an adult female was a juvenile male who appears to have been sleeping in the living room.  The firearm was loaded with one round in the chamber, ready to be fired by anyone who accessed it.  This defendant's possession of this gun alone fundamentally threatens this community's safety, as this Court has repeatedly warned against discounting the inherent danger associated with loaded guns.  *See United States v. Blackson*, 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a loaded firearm), *aff'd* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  That danger is particularly acute here because of how the gun was stored—in the open and easily accessible to a juvenile.

The danger posed by guns such as the one recovered here cannot be overstated.  At a moment's notice the defendant or the juvenile could have accessed this gun and fired multiple rounds of 5.7x28mm ammunition.  As it relates to the defendant, the danger to the community is heightened because he previously engaged in a violent armed offense.  Accordingly, the nature and circumstances of these offense weighs in favor of detention.

## B.    The Weight of the Evidence Against the Defendant is Formidable.

The second factor to be considered, the weight of the evidence, also favors detention.  Here, the firearm was found in the defendant's bedroom on the door to the closet closest to his bed.  The defendant is tied to this apartment not only by his presence there when the search warrant was executed, but also by subscriber information associated with his cellphone and cell site location information indicating that his phone was daily in the vicinity of the apartment.  This is the defendant's apartment, the defendant's bedroom, and the defendant's gun.  As this Court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the

government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. Because that is true here, the strength of the evidence against the defendant favors detention.

### C.     The Defendant's History and Characteristics Merit Detention.

The third factor—the history and characteristics of the defendant—conclusively favors detention. Since 2002, the defendant has consistently been arrested, convicted, and under supervision for drugs and firearm related offenses, in addition to a conviction for robbery with a dangerous weapon involving a pistol. His track record under supervision is abysmal, and the facts underlying his prior convictions demonstrate his danger to the community

The defendant's recent criminal history demonstrates that he is a poor candidate for supervision, as this offense and his last one occurred while under court supervision. Here, when the defendant was arrested, he was on probation for unlawfully possessing marijuana with the intent to distribute it, unlawfully possessing oxycodone, and unlawfully possessing 5.56x45mm rifle ammunition, in D.C. Superior Court Case No. 2024 CF2 008176. He had started probation just 6 months earlier, on February 13, 2025. And when the defendant was arrested in that case, he was on probation for carrying a pistol without a license (D.C. Superior Court Case No. 2022 CF2 002248). It had been approximately 4 months since the defendant was released and placed on probation there.

This case represents the defendant's fifth involving a firearm. In addition to his conviction for carrying a pistol without a license in Case No. 2022 CF2 002248, the defendant was also convicted of carrying a pistol without a license in D.C. Superior Court Case No. 2008 CF2 016552. At the time, the defendant was on parole for a conviction for robbery with a dangerous weapon in

Prince George's County, Maryland Case No. CT052115A. According to a Presentence Report detailing the probable cause statement underlying that Robbery conviction, the defendant and another man robbed two victims inside a business at gunpoint. When the defendant and his confederate learned that the business did not have money for them to take, they struck the victims in their head, stole their money, and then took them to a back room where they threatened to kill them. This was after the defendant's illegal gun possession case in which he pleaded guilty to attempting to carry a pistol without a license and unlawful possession of ammunition, in D.C. Superior Court Case No. 2002 FEL 007130.

In addition to the defendant's violent and firearms convictions, he also has a steady stream of drug convictions. In addition to his most recent case in 2024 CF2 008176, the defendant has been convicted of possessing drug paraphernalia (Arlington, Virginia Case No. GC16004424-00), possessing marijuana with intent to distribute it, and possession of drug paraphernalia (D.C. Superior Court Case No. 2011 CF2 002600), possessing cocaine (D.C. Superior Court Case No. 2007 CF2 024977), attempting to possess marijuana (D.C. Superior Court Case No. 2002 CMD 011061), and possessing marijuana with intent to distribute it (D.C. Superior Court Case No. 2001 CMD 011360).

Even aside from the nature of these convictions involving violence, illegal gun possession, and drugs, the defendant's overall track record while under supervision demonstrates why he will be a danger to the community if released. He has violated the terms of his supervision and time again. For example, starting with his first conviction (Case No. 2001 CMD 011360), after receiving a suspended sentence and being placed on probation, he was rearrested three times and failed to comply with his drug testing requirements. His probation was revoked to incarceration. Similarly, his supervised release related to his 2008 carrying a pistol without a license conviction

(Case No. 2008 CF2 016552) was revoked, as was his supervised release in Case No. 2011 CF2 002600 (possessing marijuana with the intent to distribute it). Even without counting this case as a violation of his current probation, the defendant's supervision has been revoked at least four times.

And even in cases where his supervision was considered "satisfactorily" completed, the defendant still had problems with supervision. For example, in Case No. 2002 CMD 011061, the defendant received a suspended sentence and was placed on probation, but after incurring technical violations and rearrests, he failed to report for a probation show cause hearing and a bench warrant issued. Nevertheless, the defendant's probation was not revoked, and his supervision was marked as being completed satisfactorily.

The defendant's criminal history shows repeated instances of illegal gun possession, and his willingness to use firearms violently. But equally troublesome is his inability to follow the conditions of release while under supervision. The defendant has proven time and time again that he is not a good candidate for supervision, and his past behavior demonstrates that nothing short of detention will stop him from illegally possessing a gun. The defendant's actions in this case demonstrate that he remains either unwilling or unable to comply with the law, and continues to carry extremely dangerous, illegal weapons. He should be detained pending trial.

### D.    **The Defendant Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by the defendant's release, similarly weighs in favor of detention. This case is analogous to what then–Chief Judge Howell recently stated, "[a]t the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community."

*Blackson*, 2023 WL 1778194, at \*11. The defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283). The defendant's constant stream of illegal behavior, his continued possession of illegal firearms, his use of a firearm to commit violence, and his repeated substantive violations of the terms of supervision all demonstrates that he is a consistent danger to the community. The Court can have no confidence that the defendant will abide by court orders and refrain from illegally possessing a gun if released. All of the factors the Court must consider point to one conclusion—the defendant should be detained pretrial.

//    //

//    //

//    //

## <u>CONCLUSION</u>

Because all four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:    <u>*/s/ John Parron*</u>
Sitara Witanachchi
Matthew W. Kinskey
John Parron
D.C. Bar No. 1023007 (Witanachchi)
D.C. Bar No. 1031975 (Kinskey)
PA Bar No. 324503 (Parron)
Assistant United States Attorneys
Violent Crime and Narcotics Trafficking Section
601 D Street NW
Washington, D.C. 20530

Dated: August 31, 2025